UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Amica Mutual Insurance Company,<br><br>    Plaintiff,<br><br>v.<br><br>Wash Systems, LLC d/b/a Waterwerks Car Wash,<br><br>    Defendant. | Civil File No. _____<br><br>**COMPLAINT** |

Plaintiff, Amica Mutual Insurance Company, alleges the following in support of its Complaint for Declaratory Judgment against Defendant Wash Systems, LLC d/b/a Waterwerks Car Wash.

## THE PARTIES

1. Amica Mutual Insurance Company ("Amica"), is a corporation organized under the laws of the State of Rhode Island with its principal place of business located in Lincoln, Rhode Island.

2. Wash Systems, LLC d/b/a Waterwerks Car Wash ("Waterwerks") is a limited liability corporation organized under the laws of the State of Minnesota, with its principal place of business at 6901 Laurel Avenue, Golden Valley, Minnesota.

3. Upon information and belief, the individual members and managers of Waterwerks are Steven L. Smith and Thomas R. Londo, both of whom are citizens and residents of the State of Minnesota.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the citizenships of the parties are diverse and the amount in controversy

exceeds the sum of $75,000, exclusive of interest and costs. Specifically, the amount in controversy involves $2,350,000 in settlement paid by Amica that Amica now seeks to recover through indemnity from Waterwerks.

5. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2) in the United States District Court for the District of Minnesota because Waterwerks and its members and managers are residents and citizens of Hennepin County in the State of Minnesota and because a substantial part of the events giving rise to this litigation took place in this judicial district.

## FACTUAL BACKGROUND

6. Amica issued a Personal Auto Policy to Michael P. Koehl and Jennifer B. Koehl (collectively, "the Koehls") for the policy period October 1, 2019 to October 1, 2020, Policy No. 90xxxxxxxxx (the "Auto Policy").

7. The limit of coverage provided by the Auto Policy for covered claims against the Koehls is $500,000 for each accident.

8. Amica also issued a Personal Umbrella Liability Policy to the Koehls for the policy period October 1, 2019 to October 1, 2020, Policy No. 70xxxxxxxx (the "Umbrella Policy").

9. The limit of liability coverage provided by the Umbrella Policy for covered claims against the Koehls is $5,000,000 in excess of the limit of coverage provided by the Auto Policy.

10. On January 22, 2020, Jennifer Koehl drove a Toyota RAV 4 owned by the Koehls (the "Vehicle") to the Waterwerks Car Wash located at 901 Louisiana Avenue South in Golden Valley, Minnesota, to have the Vehicle washed.

11. At some point after Jennifer Koehl turned over the Vehicle to Jaime Lucero Vivaldo ("Vivaldo"), an employee of Waterwerks, Vivaldo drove the Vehicle into other vehicles in a drying bay where two other employees of Waterwerks were working specifically, Claudia Algua-Macario and Elena Galeana Pimental (the "Incident").

12. Claudia Algua-Macario ("Macario") and Elena Galeana Pimental ("Pimental") were seriously injured as a result of the Incident.

13. Macario and Pimental asserted claims against the Koehls seeking to recover damages from the Koehls based upon Minn. Stat. § 169.09, subd. 5a., which provides that "[w]henever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

14. At the time of the Incident, the Vehicle was an insured vehicle under the Auto Policy and the Umbrella Policy.

15. Mr. and Mrs. Koehl tendered the claim to Amica under the Auto Policy and Umbrella Policy.

16. On December 29, 2021 and September 19, 2022, Amica sent a letter to Waterwerks explaining that Amica would be entitled to indemnity from Waterwerks for any monies paid to Macario and Pimental on the grounds that Waterwerks was vicariously

liable for the active negligence of its employee, Vivaldo, whereas the Koehls could only be liable as passive tortfeasors under Minn. Stat. § 169.09, subd. 5a.

17. Amica demanded in its letters to Waterwerks that Waterwerks participate in mediation and fully fund any settlement reached between the Koehls and Pimental and Macario.

18. Waterwerks did not respond to Amica's letters.

19. On September 27, 2022, Amica participated in a mediation of the claims asserted by Macario and Pimental.

20. Through counsel for its insurers, Waterwerks attended this mediation.

21. Waterwerks refused to contribute any monies to the settlement of Macario's and Pimental's claims.

22. At the conclusion of the mediation, Amica and the Koehls agreed to enter into settlement agreements with Macario and Pimental consistent with *Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn. 1977), whereby the settlement paid by Amica, on behalf of the Koehls, represented compensation for all of Macario's and Pimental's damages that were not compensable pursuant to Chapter 176 of the Laws of Minnesota.

23. Pursuant to the *Naig* settlements, Macario and Pimental agreed, among other things, to fully release and discharge the Koehls and Amica from all claims that in any way related to or arose out of the Incident.

24. Waterwerks was made aware of the dollar amounts of the proposed settlements with Macario and Pimental during mediation and before actual settlement was reached.

25. At no time did Waterwerks make any objection to the amount or terms of the proposed settlements reached with Macario and Pimental.

26. Amica funded the entire amount of the settlements reached with Macario and Pimental.

## COUNT I – COMMON LAW INDEMNITY

27. Amica hereby incorporates paragraphs 1 through 26 as if fully set forth herein.

28. As the negligent driver and operator of the Vehicle at the time of the Incident, Vivaldo was the active tortfeasor in causing injury to Macario and Pimental.

29. Waterwerks, as Vivaldo's employer at the time of the Incident, is vicariously liable for Vivaldo's negligence in connection with the Incident.

30. As the owners of the Vehicle operated by Vivaldo at the time of the Incident, the Koehls are passive tortfeasors by virtue of Minn. Stat. § 169.09, subd. 5a, and deemed liable to Macario and Pimental for the injuries caused by Vivaldo.

31. Because the claims asserted against the Koehls were covered under the Auto Policy and Umbrella Policy, Amica fully funded and paid each of the *Naig* settlements reached with Macario and Pimental.

32. Amica is therefore entitled to indemnity from Waterwerks for the full amount of the settlements paid by Amica to Macario and Pimental.

WHEREFORE, Amica respectfully requests that the Court enter judgment in its favor on Count I of its Complaint against Waterwerks and award the following relief to Amica:

1048024\312310845.v1

a. Requiring Waterwerks to pay to Amica the full amount of the settlements paid by Amica to settle the claims asserted by Macario and Pimental against the Koehls, plus pre- and post-judgment interest at the statutorily allowed rate on these amounts;

b. Requiring Waterwerks to pay to Amica the reasonable attorney's fees and taxable costs incurred by Amica in prosecuting this lawsuit against Waterwerks; and

c. Awarding any such other and further relief to Amica that the Court deems proper under the facts and circumstances.

Dated: January 20, 2023.

HINSHAW & CULBERTSON LLP

By: /s/ Paulette S. Sarp
Paulette S. Sarp, Reg. No. 351453
250 Nicollet Mall, Suite 1150
Minneapolis, MN  55401
Telephone:  612-333-3434
Fax:  612-334-8888
psarp@hinshawlaw.com

Attorneys for Plaintiff Amica Mutual Insurance Company

6

1048024\312310845.v1